**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JAMES PAIGE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 22-cv-11216-DJC** |
| | ) |
| **STEPHEN KENNEDY,** | ) |
| | ) |
| **Respondent.** | ) |

**<u>MEMORANDUM AND ORDER</u>**

**CASPER, J.**                                                           **September 6, 2024**

## I.      Introduction

Petitioner James Paige ("Paige") has filed a petition for a writ of *habeas corpus* (the "Petition") pursuant to 28 U.S.C. § 2254.  D. 1.  In addition, Paige also has moved to request the re-testing of DNA samples pursuant to Mass. Gen. L. c. 278A.  D. 29.  Stephen Kennedy, Superintendent of the Old Colony Correctional Center in Bridgewater, Massachusetts ("Respondent") opposes the Petition.  D. 43.  For the reasons below, the Court DENIES the Petition, D. 1, and denies Paige's motion, D. 29, as moot.

## II.      Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal *habeas* courts may not grant relief unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

1

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As "the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," this standard is "difficult to meet." Greene v. Fisher, 565 U.S. 34, 38 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102–03 (2011)) (internal quotation marks omitted).

For the purposes of Section 2254(d)(1), federal law is defined as Supreme Court holdings and excludes dicta. White v. Woodall, 572 U.S. 415, 419 (2014). A state court's decision is contrary to clearly established federal law if it "'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court' but reaches a different result." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012) (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016) (emphasis omitted) (quoting Harrington, 562 U.S. at 101). Rather, to prevail, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

For the purposes of § 2254(d)(2), a petitioner must show that the state court's decision was based upon "objectively unreasonable" factual determinations, which are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). In other words, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340 (citing 28 U.S.C. § 2254(d)(2)).

### III.    Factual and Procedural Background

Unless otherwise noted, the following facts are primarily drawn from the Supreme Judicial Court's decision affirming Paige's conviction and denying his motion for a new trial, Commonwealth v. Paige, 488 Mass. 677, 685 (2021), and other state court records. D. 15-1 *et seq.*

#### A.    Commission of the Crime

In 1987, Dora Brimage ("Brimage" or the "victim") attended a party in Boston. Paige, 488 Mass. at 678. Upon leaving, Brimage asked Paige's brother for a ride from the party. Id. Another individual offered to drive her, but Paige, who did not know her, forcefully said that she would go with him and his brother. Id. Paige and his brother drove Brimage to Georgia Street. Id.

The day after the party, construction workers found victim's body at an indoor work site adjacent to Georgia Street, where Paige's brother and other members of Paige's family worked. Id. She was on her back with her lower clothing, including her underwear, pulled down around one of her ankles. Id. Brimage had died from blunt force injuries to the head and strangulation. Id. The murder weapon, a construction shovel, was left next to her body along with a piece that had broken off it. Id. There was sperm in her vagina that had been deposited within twenty-four hours of her death. Id. There was no sperm in the victim's underwear. Id.

#### B.    Investigation

The murder investigation went unsolved for decades until Boston police reopened the case in 2013 for DNA testing. Id. at 679. DNA testing revealed that the sperm in the victim's vagina matched Paige's genetic profile. Id.

Paige spoke to the police in 1987 and 2015.  In 1987, Paige told police that he and his brother had dropped Brimage off at a club not near where her body was found.  Id.  In 2015, Paige told police a different story, that he and his brother had driven her to Georgia Street.  Id.  Paige also told police in 2015 that he had never had sexual intercourse with Brimage.  Id.

C.    **Relevant State Proceedings**

On June 27, 2016, a Suffolk grand jury returned an indictment charging Paige with murder in the first degree.  D. 15-1 at 4; Paige, 488 Mass. at 677.  The trial began on March 6, 2018, in the Suffolk Superior Court.  D. 15-1 at 9.  On March 16, 2018, the jury convicted Paige of felony murder in the first degree with aggravated rape as the predicate offense.  D. 15-1 at 10; Paige, 488 Mass. at 677.  Paige filed a notice of appeal on March 26, 2018 and the Supreme Judicial Court entered his appeal on its docket on September 10, 2019.  D. 15-1 at 11; D. 15-2 at 1.  Paige also moved for a new trial which the Supreme Judicial Court remanded to the Superior Court.  Paige, 488 Mass. at 678.  The Superior Court denied Paige's motion for a new trial on March 23, 2020, prompting Paige to appeal.  D. 15-1 at 12; Paige, 488 Mass. at 678.  On December 6, 2021, the Supreme Judicial Court issued its decision affirming Paige's conviction and affirming the denial of his motion for a new trial.  Paige, 488 Mass. at 684.

D.    **This Petition**

In the Petition, Paige asserts five grounds:  (1) that his conviction violated his due process rights under the Fourteenth Amendment due to insufficient evidence ("Ground I"); (2) that the trial judge abused his discretion for not providing a consciousness of guilt jury instruction ("Ground II"); (3) that his trial counsel's decision not to request a consciousness of guilt instruction constitutes ineffective assistance of counsel ("Ground III"); (4) that the prosecutor's closing argument about the absence of semen in Brimage's underwear was improper ("Ground IV"); and

4

(5) that the trial judge erred by denying Paige's motion for mistrial after the government showed

the jury an unredacted portion of his videotaped interview with the police ("Ground V").  D. 1 at

5-11.

## IV.    Discussion

Although Paige asserts that the Supreme Judicial Court made unreasonable applications of

law and unreasonable determinations of facts, the Petition does not dispute any of the Supreme

Judicial Court's factual determinations.[1]  D. 43 at 9, 16, 20, 25, 28; see generally D. 1; D. 35 at

21–29.  Accordingly, this Court focuses on Paige's claims under the unreasonable application of

law provision pursuant to 28 U.S.C. § 2254(d)(1).

### A.    Sufficiency of Evidence (Ground I)

In Ground I, Paige asserts that his due process rights under the Fourteenth Amendment

were violated because his conviction was based upon insufficient evidence.  D. 35 at 6.   Paige

argues that while the evidence is sufficient to show that he had sexual intercourse with Brimage,

it is insufficient to prove that sex "was accomplished by force rather than with the [Brimage]'s

consent." Id. at 7.  Federal habeas review for sufficiency of evidence challenges is governed under

the standard set in Jackson v. Virginia, 433 U.S. 307 (1979), where "a conviction must be sustained

if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Magraw

---

[1] Even if the Court were to consider Paige's undeveloped argument as to the unreasonable
determination of facts by the Supreme Judicial Court, the Petition still fails.  To prevail, Paige
must demonstrate that the Supreme Judicial Court's decision was "'based on an unreasonable
determination of the facts' on the record before that court.'"  Porter v. Coyne-Fague, 35 F.4th 68,
75 (1st Cir. 2022) (citing 28 U.S.C. § 2254(d)(2).  "This demanding showing cannot be made when
'[r]easonable minds reviewing the record might disagree' about the finding in question.'"  Porter,
35 F. 4th at 75 (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)).  Here, nothing in the record
undermines the Supreme Judicial Court's factual determinations or suggests that they are
unreasonable.

v. Roden, 743 F.3d 1, 4 (1st Cir. 2014) (quoting Jackson, 433 U.S. at 319 (emphasis in original)). "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was 'objectively unreasonable.'" Parker v. Matthews, 567 U.S. 37, 43 (2012) (quoting Cavazos v. Smith, 565 U.S. 1, 4 (2011)).

The Jackson test "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016) (citing Jackson, 433 U.S. at 324 n.16). Paige was convicted of felony murder in the first degree with aggravated rape as the predicate offense. Paige, 488 Mass. at 678. To prove felony-murder in the first degree of aggravated rape, the Commonwealth must have proven "(1) the defendant committed or attempted to commit aggravated rape; (2) the death was caused by an act of the defendant in the commission or attempted commission of aggravated rape; (3) the act that caused the death occurred during the commission or attempted commission of aggravated rape; and (4) the defendant intended to kill the victim, intended to cause grievous bodily harm to the victim, or intended to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result." Id. at 679 (citing Commonwealth v. Brown, 477 Mass. 805, 825 (2017)) (Gants, C.J., concurring). To prove aggravated rape in this circumstance, the Commonwealth must show "(1) the defendant had sexual intercourse with the victim; (2) the defendant compelled the victim to submit by force and against her will or compelled the victim to submit by threat of bodily injury; and (3) the sexual intercourse resulted in or was committed with acts resulting in serious bodily injury." Paige, 488 Mass. at 680.

Here, the Supreme Judicial Court examined the evidence linking Paige to Brimage, which indicated "that [Paige] did not know [Brimage], that [Paige] and his brother drove [Brimage] to a

street adjacent to where her body was found the next morning, that [Brimage]'s body was found at a construction site where [Paige]'s brother and other members of [his] family worked, that [Paige]'s sperm was deposited in [Brimage]'s vagina within twenty-four hours of her death despite [Paige]'s statement to police that he had not had sexual intercourse with [her], that no sperm was found on [Brimage]'s underwear, and that [she] was injured severely and died from blunt force injuries to the head and strangulation." Paige, 488 Mass. at 680.  In light of the evidence, the Supreme Judicial Court concluded that the record was "sufficient to satisfy all the elements of felony-murder in the first degree with a predicate offense of aggravated rape." Paige, 488 Mass. at 680.

This conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law.  The Supreme Judicial Court relied upon its own precedent in Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), which held in the wake of Jackson, that appellate courts must uphold convictions if "there was enough evidence that could have satisfied a rational trier of fact of each element beyond a reasonable doubt." Latimore, 378 Mass. at 677–78.  The Latimore test is "functionally equivalent to the test established by the Supreme Court in Jackson." Scensy v. Ryan, No. 16-cv-40024-FDS, 2018 WL 2089355, at *3 (D. Mass. May 3, 2018).  Accordingly, the Supreme Judicial Court did not apply "a rule that contradicts the governing law" in Supreme Court cases. Dagley v. Russo, 540 F.3d 8, 17-18 (1st Cir. 2008).

Nor did the Supreme Judicial Court's decision involve an unreasonable application of the Supreme Court's sufficiency of the evidence standard in Jackson.  There, the Supreme Court looked at the totality of circumstances in determining the sufficiency of the evidence to support a finding that the defendant had the specific intent to kill the victim. Jackson, 433 U.S. at 324-25.

Here, as discussed above, there was more than sufficient evidence supporting Paige's conviction. <u>Paige</u>, 488 Mass. at 680.[2]

Accordingly, the Supreme Judicial Court's decision is not an unreasonable application of clearly established federal law, and Ground I of the Petition fails.

### B.   <u>Declining to Give Consciousness of Guilt Instruction (Count II)</u>

In Ground II, Paige argues that the trial court abused its discretion by declining to give a consciousness of guilt instruction to the jury. D. 35 at 14. In general, "improper jury instructions will not form the basis for federal habeas corpus relief," <u>Niziolek v. Ashe</u>, 694 F.2d 282, 290 (1st Cir. 1982), unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). In cases "where the petitioner's claim is based on failure to give a jury instruction, meeting the habeas standard is even more difficult." <u>Dudley v. Ryan</u>, 62 F. Supp. 3d 193, 197 (D. Mass. 2014).

---

[2] Paige argues that <u>Commonwealth v. Scensy</u>, 472 Mass. 185 (2015), supports his claim that the evidence was insufficient to prove that he forced Brimage into having sex with him. D. 35 at 11-12. <u>Scensy</u> held that "[a]lthough the victim ultimately suffered severe injuries that, the jury could infer, were inflicted in connection with her murder, there was no evidence favoring the inference that the defendant raped the victim before killing her over the inference that he had consensual sex with the victim and then killed her," and given these "inconsistent propositions," "the evidence was insufficient to permit a finding of lack of consent beyond a reasonable doubt" and reversed the defendant's conviction for aggravated rape. <u>Id.</u> at 193-94. Paige fails, however, to note that the Supreme Judicial Court clarified in <u>Paige</u>, after discussing the holding in <u>Scensy</u>, that where "there is evidence of sexual intercourse between the defendant alongside a homicide, that alone is insufficient to prove felony-murder," but "[w]e now conclude, however, that where there is evidence that the defendant severely injured and killed the victim proximate to having sex with the victim, the jury may infer that the victim did not consent to the sexual intercourse." <u>Paige</u>, 488 Mass. at 681. Given the Supreme Judicial Court's own distinction of <u>Scensy</u> as to its own precedent, there is nothing about that analysis that warrants a different outcome here as to Ground I.

At trial, the Commonwealth requested the trial judge to provide a consciousness of guilt instruction.  D. 15-12 at 77; Paige, 488 Mass. at 681.  The Commonwealth argued that the instruction was appropriate because Paige had lied about where he had dropped Brimage off and whether he had sex with her.  D. 15-12 at 78, Paige, 488 Mass. at 681.  The trial judge determined that these discrepancies were inconsistent statements rather than evidence of consciousness of guilt and declined to give the instruction unless defense counsel wanted the court to do so and defense counsel did not.  D. 15-12 at 78-79; Paige, 488 Mass. at 681.  Paige argues that the trial judge still should have given the instruction because part of it would have advised the jury, among other things, that "false statements do not necessarily indicate consciousness of guilt and that evidence of consciousness of guilt alone can never be sufficient to support a conviction."  D. 35 at 15–16.

Paige fails to show how the trial judge's refusal to give the instruction "so infected the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 72; Connors v. Fitzpatrick, 715 Fed. Appx. 26, 26 (1st Cir. 2017) (and cases cited).  Indeed, Paige acknowledges that a decision to provide a jury instruction is left to "the sound discretion of the judge, and it will not be error if he or she chooses not to instruct on the subject in the absence of a request."  D. 35 at 16 (quoting Commonwealth v. Simmons, 419 Mass. 426, 436 (1995)).  Significantly, for a federal habeas claim, Paige has failed to show how the failure to give this instruction so infected the trial, amounting to a due process violation.  A court considering such a claim, must consider "the totality of the circumstances—including all the instructions to the jury, arguments of counsel, whether the weight of the evidence was overwhelming and other relevant factors—to determine whether the defendant received a constitutionally fair trial."  Kentucky v. Whorton, 441 U.S. 786, 789 (1979).  Considering the totality of circumstances here, Paige has failed to meet his high burden.  There is no suggestion that the jury instructions given to the jury were incorrect, there

was ample evidence of guilt and, significantly, the government did not even argue consciousness of guilt in its closing argument, but instead (perhaps reflective of the exchange with the trial judge at the charge conference) that Paige gave inconsistent stories to the police and that the jurors know from "your personal experience and from your common sense it's much harder to remember a lie than it is the truth," and that his later statement in 2015 about driving the victim to Georgia Street was truthful (and his 1987 statement about dropping her off at a club was not).  D. 15-13 at 58-49, 54, 55-56.

Accordingly, Ground II of the Petition also fails.

**C.** **Counsel's Failure to Seek a Consciousness of Guilt Instruction (Ground III)**

Relatedly, in Ground III, Paige contends that defense counsel's failure to request a consciousness of guilt instruction amounts to ineffective assistance of counsel.  To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), a defendant must show "(1) deficient performance by counsel (2) resulting in prejudice."  Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)). To demonstrate deficient performance, a defendant must show that his counsel's performance "fell below an objective standard of reasonableness under the circumstances."  Yeboah-Sefah, 556 F.3d at 70 (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)).  To demonstrate prejudice, a defendant must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different."  Yeboah-Sefah, 556 F.3d at 70 (quoting Sleeper, 510 F.3d at 39).  When a petitioner brings a *habeas* claim alleging ineffective assistance of counsel, the Court's review is highly deferential.  See Harrington, 562 U.S. at 105 (citations and internal quotation marks omitted) (explaining that, because "[t]he standards created

by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so").

Paige does not satisfy either prong here. First, declining to request a consciousness of guilt instruct was not deficient performance, but a manifestly reasonable choice. As the Supreme Judicial Court noted in finding no error in such declination, this decision was a strategic choice, pointing to defense counsel's affidavit in which the counsel explained that he felt an instruction consciousness of guilt "would be more harmful than helpful to the defense by calling the attention of the jury" to Paige's inconsistent statements to the police about his sexual encounter with Brimage. Paige, 488 Mass. at 682.

Defense counsel's decision represents a reasonable tactical choice, not ineffective assistance. This is particularly true where, as Paige acknowledges, any such instruction would also have instructed jurors that they could consider whether Paige's inconsistent statements to police "indicate feelings of guilt and, if so, whether such feelings tend[] to show actual guilt." D. 35 at 15.

Moreover, even if Paige had shown that the failure to seek the instruction was deficient, he has failed to show that he was prejudiced by it. See Yeboah-Sefah, 556 F.3d at 70. There can be no reasonable suggestion on this record, that but for this error, the outcome of Paige's trial would have been different. Given that the instruction would have, in part, instructed jurors that they could consider Paige's inconsistent statements as consciousness of his guilt of the crime charged and highlighted the significance of these statements, it is hard to conclude that the giving of such instruction would have resulted in his acquittal.

For these reasons, Ground III of the Petition fails.

**D.**     **Prosecution's Closing Argument (Ground IV)**

In Ground IV, Paige argues that his due process rights were violated because the Commonwealth exceeded the scope of proper closing argument when he argued that the reason there was no semen in the victim's underwear was because she did not have a chance to put them back on and she never got off the floor after Paige raped her, D. 35 at 22-23.

For such a claim, a prosecutor's comment must "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Kirwan v. Spencer, 631 F.3d 582, 588 (1st Cir. 2011) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  Relevant to this determination is whether "(1) the [closing statement] 'manipulate or misstate the evidence,' (2) the judge 'instructed the jurors the jurors . . . that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence,' and (3) '[t]he weight of the evidence against the petitioner was heavy.'" Kirwan, 631 F.3d at 589 (quoting Darden, 477 U.S. at 182).

The prosecutor's closing argument did not violate Paige's due process rights.  First, the prosecutor did not misstate or manipulate the evidence.  As the Supreme Judicial Court explained, the prosecutor's closing statement "was a permissible inference grounded in the testimony at trial and the jurors' common sense." Paige, 488 Mass. at 682.  In particular, the Supreme Judicial Court noted that jurors could make this inference based upon testimony from "[a]n employee with the Boston police department's crime laboratory" who had testified that semen could 'flow down into the crotch area of the underwear'" and the fact that "there was evidence that  the victim was found with her underwear pulled down around one of her ankles." Id. at 682–83.  Second, the trial judge properly instructed jury about the law, including but not limited to the instruction that opening statements and closing arguments were not evidence.  D. 15-13 at 77.  Finally, there was more than

sufficient evidence, aside from this reasonable inference, that could allow a jury to conclude Page committed the charged crime.  See Paige, 477 Mass. at 480.

For these reasons, Ground IV of the Petition fails.

### E.    Motion for Mistrial (Ground V)

In Ground V, Paige asserts that the Supreme Judicial Court erred by affirming the trial court's denial of his motion for a new trial after the Commonwealth showed the jury an unredacted version of Paige's taped interview with Boston police.  In relevant part, the video shows Paige telling detectives, "I don't know why I should be having more cases," and one detective mentioning Paige as being "in custody."  Paige, 488 Mass. at 683.

"The Supreme Court has clearly established that there is a 'broad discretion reserved to the trial judge' to decide 'the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'"  Hardy v. Maloney, 909 F.3d 494, 505 (1st Cir. 2018) (quoting Illinois v. Somerville, 410 U.S. 458, 462 (1973)).  Here, Paige fails to identify any Supreme Court holding requiring a state court to declare mistrial for introducing such evidence. See Hardy, 909 F.3d at 505–06 (concluding that the petitioner's claim fails "because he is unable to point to any Supreme court case holding, on similar facts, that a mistrial is required"); see also Jenkins v. Bergeron, 824 F.3d 148, 153 (1st Cir. 2014).

Accordingly, it cannot be said the Supreme Judicial Court has unreasonably applied established federal law.  Moreover, the curative steps that the trial judge took regarding the display of the videotape were consistent with ensuring Paige a fair trial.  After consideration of the motion, the Court gave the jury a prompt and curative instruction to disregard it, Paige, 488 Mass. at 683-84, which is consistent with efforts to address any prejudice to the defendant.  United States v. De Jesus Mateo, 373 F.3d 70, 73 (1st Cir. 2004) (noting that "[w]ithin wide margins, the prejudice

13

caused by improper testimony can be addressed by providing appropriate curative instructions), and Paige has not pointed to any Supreme Court precedent requiring more.

Accordingly, the Petition fails on this ground, Ground V, as well.

## V.   Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D. 1.  Given the denial of the Petition, the Court DENIES Paige's motion for re-testing of DNA samples filed in this case, D. 29, as moot.

Paige may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."  Miller-El, 537 U.S. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).  Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion, denying the Petition debatable or wrong.  The Court, therefore, is not inclined to issue a certificate of appealability, but will give Paige until October 7, 2024 to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to any of the grounds in the Petition.

**So Ordered.**

/s Denise J. Casper
United States District Judge